HAMMERSLAG v. CURTIS.

1. FRAUD—STOCK—REPRESENTATIONS AS TO PURPOSE—INJURY TO PLAINTIFF.

In suit to rescind sale of shares of no par stock to president for alleged fraudulent representations as to financial condition of corporation made to plaintiff, a director, representation by defendant that his purpose in making purchase was to resell them at a higher price and give the company the benefit of the gain, which representation, if made, is without record of authorization by the company or obligation on its part to save defendant harmless was voluntary and failure of defendant to resell the shares for the benefit of the company did not constitute a fraud injuring plaintiff.

2. SAME—INDUCEMENT TO SELL STOCK—PREPONDERANCE OF EVIDENCE.

In suit to rescind sale of shares of stock, Supreme Court is unable to hold plaintiff established by a preponderance of evidence the existence of the fraud on the part of defendant in making

representations which induced plaintiff to sell his stock for
less than its value where record upon such matter contains a
flat contradiction of the parties.

3. SAME—MISREPRESENTATIONS OF FACTS AFFECTING VALUE OF STOCK
—EVIDENCE.

Claim of deceit incident to sale of stock plaintiff sought to
rescind because of defendant's alleged misrepresentation as to
whether or not, at time negotiations relative to the stock
option were being carried on, a contract with another com-
pany, the signing of which would materially affect value
of stock involved, had been signed *held*, not affirmatively
established.

Appeal from Superior Court of Grand Rapids;
Taylor (Thaddeus B.), J. Submitted April 4, 1939.
(Docket No. 6, Calendar No. 40,143.) Decided
June 5, 1939.

Bill by Hugo B. Hammerslag against Alonzo G.
Curtis to obtain rescission of a sale of stock or money
damages. Bill dismissed. Plaintiff appeals. Af-
firmed.

*Clare J. Hall*, for plaintiff.

*Knappen, Uhl, Bryant & Snow*, for defendant.

WIEST, J. This is a bill to rescind a sale of shares
of stock in a corporation or have damages by reason
of alleged false and fraudulent representations in-
ducing the sale. Plaintiff owned 1,181 shares of the
no par value stock of the Electric Sorting Machine
Company, a Michigan corporation, and was a mem-
ber of the board of directors. The company was in
financial difficulties. Defendant was president of the
company. On March 13, 1935, plaintiff and Lewis B.
Tinkham, who was also a stockholder, executed a
writing in the form of an option, granting to Alonzo
G. Curtis, defendant herein, the right to purchase all

their shares of stock on or before May 1, 1935, for $4,000. Mr. Curtis exercised the right, made the purchase, and paid the price. February 13, 1936, plaintiff, by his attorney, gave defendant notice of rescission of the stock option and sale thereunder for claimed false and fraudulent representations inducing the same, and made demand for return of the shares of stock. Defendant made refusal.

March 10, 1936, plaintiff filed the bill herein asking for rescission or damages, and alleged in substance that defendant represented to him the financial affairs of the company were in such a state that immediate means to obtain money was necessary and so induced him to sign the option, sell his shares of stock at a low price in order that the same be resold by defendant at a greater price and money thereby obtained for the benefit of the company while, in truth and fact, the averred pressing need did not exist and defendant claimed individual ownership of the shares of stock. The bill also alleged that defendant denied that a contract of great benefit to the company had been signed by the Planters Nut & Chocolate Company and, had the fact of the signing been disclosed, the option would not have been given. Defendant denied the alleged fraud and deceit. Proofs were taken in open court and decree entered dismissing plaintiff's bill. Plaintiff prosecutes review by appeal.

At the time plaintiff expressed willingness to sell all of his shares of stock the affairs of the company were at low ebb, bills could not be met and shareholders appeared to be unwilling to give further financial aid to the company. Plaintiff, as a director, must have been well aware of the condition of the company and such knowledge would account for his willingness to sell all his shares of stock at the price agreed upon in the option and thus sever his

relation with the company. Plaintiff was a man of affairs, with extended business experience, and fully capable of understanding and protecting his rights and financial interests.

The expressed terms of the written option show an offer of sale of his shares of stock to defendant personally, and the purchase under the option was consummated by defendant paying the stipulated price and receiving the shares.

The claim that the represented purpose of defendant in purchasing the shares was to resell the same at a higher price and the company should have the gain is without record of authorization by the company or obligation on its part to save defendant harmless, and the undertaking, if so represented by defendant, was voluntary, and failure of defendant to resell the shares for the benefit of the company did not constitute a fraud bringing any hurt to plaintiff. If defendant advanced his own money to make the purchase and should have carried out the purpose claimed by plaintiff and the company has been damaged by defendant's failure to perform the undertaking, the remedy, if any, is with the company and not in plaintiff. If, on the other hand, the claimed representation of purpose induced plaintiff to sell his shares of stock for less than the value thereof and was false and employed solely in order to obtain a pecuniary advantage, then plaintiff has been mulcted by a fabrication. The record upon this point contains flat contradiction of the parties, and we cannot hold that plaintiff has established by a preponderance of the evidence the existence of the fraud alleged.

The negotiations relative to the option and terms thereof were under way for some days before the date of signing and, in the meantime, negotiations were being carried on between the Planters Nut &

Chocolate Company and the Electric Sorting Machine Company relative to a contract which, if executed, would be of great benefit to the Electric Sorting Machine Company, and such benefit was apparent to both plaintiff and defendant.

While negotiations relative to the stock option were being carried on, plaintiff asked defendant if the contract with the Planters Nut & Chocolate Company had been signed, and claims that defendant said it had not been signed on the dotted line but the prospect was good.

The claim of plaintiff that, when defendant so informed him, the contract had been in fact signed is so surrounded with uncertainty of date that we cannot find the claim of deceit affirmatively established.

The contract with the Planters Nut & Chocolate Company rejuvenated the Electric Sorting Machine Company, and that fact probably accounts in some degree for this lawsuit.

The decree in the trial court is affirmed, with costs to defendant.

BUTZEL, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.